IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LISA J. JOHNSON,
     Plaintiff,

vs.                                Case No.: 5:18cv256/EMT

ANDREW SAUL,
Commissioner of Social Security,[1]
     Defendant.
_____/

## <u>MEMORANDUM DECISION AND ORDER</u>

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 10, 11). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") for review of a final determination of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C.

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted for Nancy A. Berryhill as the Defendant in this case.

§§ 1381–83.   Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are supported by substantial evidence and application of proper legal standards and that the decision of the Commissioner, therefore, should be affirmed.

## ISSUES ON REVIEW

Plaintiff raises two issues on appeal, arguing the ALJ erred in (1) not considering the impact of obesity in combination with bilateral knee osteoarthritis in finding her able to perform light work, and (2) failing to articulate the reasons she found Plaintiff not fully credible (ECF No. 18 at 2).

## PROCEDURAL HISTORY

On September 14, 2015, Plaintiff filed applications for DIB and SSI, alleging disability beginning September 26, 2014 (tr. 39, 307–16).[2]   The applications were denied initially and on reconsideration (tr. 218–26, 235–39, 241–45).   Plaintiff appeared for a hearing before the Administrative Law Judge ("ALJ") on August 10, 2017 (tr. 37–91).   On November 10, 2017, the ALJ issued a decision finding

---

[2] The administrative record, as filed by the Commissioner, consists of fourteen volumes (ECF Nos. 13–1 through 13–14) and has 673 consecutively numbered pages.   References to the record will be by "tr.," for transcript, followed by the page number.   The page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

Plaintiff not disabled under the Act (tr. 15–29). Plaintiff petitioned the Appeals Council for review of the ALJ's decision (tr. 1–5). The Appeals Council denied the request (tr. 1–5). The ALJ's decision thus became the final determination of the Commissioner. That determination is now ripe for review.

## FINDINGS OF THE ALJ

In her decision (tr. 15–29), the ALJ made several findings relative to the issues raised in this appeal:

- Plaintiff has not engaged in substantial gainful activity since September 26, 2014, the amended alleged onset date (*id.* at 17).

- Plaintiff has the following severe impairments: morbid obesity, mild intellectual disability, depression, and mild degenerative osteoarthritis (*id.*).

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.* at 18).

- Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she can lift and carry and push and pull ten pounds frequently and twenty pounds occasionally; sit, stand, and walk for six hours in an eight-hour workday; frequently kneel and

climb ramps and stairs; occasionally crouch, crawl, and climb ladders, ropes, and scaffolds; frequently work at unprotected heights; occasionally work in dust, odors, fumes, and pulmonary irritants; and is limited to performing simple, routine, and repetitive tasks (*id.* at 21).

- Plaintiff is unable to perform any past relevant work (*id.* at 27).

- Considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (*id.*).

- Plaintiff has not been under a disability, as defined in the Act, from September 26, 2014, through November 10, 2017, the date of the decision (*id.* at 28).

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is

something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v.*

*Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d

1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the

Commissioner's decision, the decision must be affirmed if supported by substantial

evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide

the facts anew, reweigh the evidence, or substitute [its] judgment for that of the

[Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)

(*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also*

*Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In

determining whether substantial evidence supports a decision, we give great

deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir.,*

*OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). A reviewing court also may not look

"only to those parts of the record which support the ALJ" but instead "must view the

entire record and take account of evidence in the record which detracts from the

evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

Cir. 1983). Review is deferential to a point, but the reviewing court conducts what

has been referred to as "an independent review of the record." *Flynn v. Heckler*,

768 F.2d 1273 (11th Cir. 1985).[3]

---

[3] The Eleventh Circuit not only speaks of an independent review of the administrative record, but

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). An individual claiming Social Security disability benefits must prove that she is disabled. *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014). And she must prove she became disabled prior to the expiration of the date last insured. *See* 42 U.S.C. §§ 416(i)(3), 423(a) and (c); 20 C.F.R. §§ 404.101, 404.130, 404.131; *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Pursuant to 20 C.F.R. § 404.1520(a)(4), the Commissioner analyzes a disability claim in five steps. [4] "Throughout the process, the burden is on the

_____

it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this Order should be considered to incorporate the appropriate parallel provision. The same applies to citations of statutes or regulations found in

claimant to introduce evidence in support of her application for benefits." *Adams*, 586 F. App'x at 533. The five steps are as follows:

1.  If the claimant is performing substantial gainful activity, she is not disabled.

2.  If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.  If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent her from performing past relevant work, she is not disabled.[4]

5.  Even if the claimant's impairments prevent her from performing past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's RFC and vocational factors, she is not disabled.[5]

---

quoted court decisions.

[4] The claimant bears the burden of establishing a severe impairment that keeps her from performing past relevant work. 20 C.F.R. § 404.1512; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

[5] If the claimant meets her burden at step four, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's

At step five (or step four in cases in which the ALJ decides a claimant can perform past work), the ALJ formulates RFC through interpretation of the medical evidence and the claimant's subjective complaints, based on the impairments identified at step two. *See* 20. C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "[R]esidual functional capacity is the most [a claimant] can still do despite [the claimant's] limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is then used by the ALJ to make the ultimate vocational determination required by step five.

## FACT BACKGROUND[6]

At the time of the hearing before the ALJ, Plaintiff was four feet, nine inches tall and weighed 250 to 257 pounds (tr. 45). She had completed high school, earning an exceptional student diploma (*id.* at 43–44, 49). Plaintiff testified she had a driver's license and drove approximately once per week, "down the road and back" to her mother-in-law's house and sometimes on a dirt road (*id.* at 48–49). She said she did not drive much because her knee bothered her when she drove (*id.*). Her "belly" also got in the way (*id.* at 74–75).

Plaintiff last worked, from 2011 to 2014, at Captain D's, cleaning tables, picking up trays, carrying tea, and doing a "little bit of prep work but not a whole

---

impairments, the claimant can perform. *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).

[6] The recitation of facts set forth below is derived from testimony at the hearing before the ALJ.

lot" (*id.* at 50–51). She said Captain D's allowed her to continue working because she was "slow" (*id.* at 70). She had worked there previously, from 2002 to 2009, and later worked as a cook for Compass Group USA, a boys' school (*id.* at 51–53). When the boys' school closed, she returned to Captain D's (*id.* at 54). Plaintiff quit her job at Captain D's because of her health—specifically, because her legs and feet swelled (*id.* at 54–55).

When asked why she feels she can no longer work, Plaintiff responded, "my legs and my arms won't reach—you know, won't do right like they're supposed to. And, you know, every time I try to get up and do it, it wants me to fall back down, you know, and everything" (*id.* at 58). She continued, "And I try—even try to get up and do dishes. You know, I can do a little bit of dishes, but I sit down and rest a little bit and get back up a little bit, rest a little bit, get back up a little bit" (*id.*). Sometimes Plaintiff sat on a stool while cooking and washing dishes (*id.* at 74).

The ALJ asked whether Plaintiff felt like her weight contributed to her difficulties (*id.* at 58). Plaintiff said "[y]eah. A little bit, yeah" (*id.*). Plaintiff acknowledged health care providers had encouraged her to lose weight (*id.* at 59). She said she had tried but did not have medication due to a lack of insurance (*id.* at 59–60). When the ALJ attempted to clarify the medication to which Plaintiff referred, Plaintiff referenced blood pressure and depression medication (*id.*). The

ALJ asked Plaintiff whether she had looked into alternatives, such as free hypertension medication from We Care or Publix, and Plaintiff made it plain she had not but said she had tried to apply for Medicaid (*id.* at 60–61).

When asked about pain, Plaintiff said she had pain in her knees "[j]ust about all the time" (*id.* at 59). She said she could "walk around," but "in 10 minutes, . . . [her] back and . . . knees [would] start hurting" (*id.*). Her feet also swelled if she walked too long (*id.* at 61). On a scale of one to ten, Plaintiff rated her pain at a "1 through 7," with seven being the worst pain she experiences (*id.*). Plaintiff explained that if she "stay[ed] on the couch for a little bit, [she could] relax, and [the pain would] . . . go away, but if [she got] up, start[ed] doing, kind of, a little bit of work, you know—but [she] tr[ied]—[she] tr[ied]" (*id.*).

Plaintiff said she began having knee pain in 2014 and that her back had been hurting for the past ten years (*id.* at 62). Yet, she had never taken pain medication (*id.*). When asked how she had been able to function without medication for her back, Plaintiff responded "I guess I just sit there a little while and everything" (*id.*). She said she "was scared to go to the doctor to find out what was going on" (*id.*).

The ALJ asked Plaintiff to describe her typical day (*id.* at 63). Plaintiff said she would get up around 8:00 or 9:00 in the morning and "try to cook, and . . . try to clean up a little bit—not a whole lot" (*id.*). She said she made breakfast for herself

and her husband—biscuits with tomato gravy, eggs, bacon, and toast—and then would "try to clean up the kitchen, try to walk a little bit" (*id.* at 63, 74). She washed dishes by hand (*id.*). After washing dishes, she would "try to do a little sweeping, but [she did not] do a whole lot" (*id.* at 65). She would then sit around and if her husband "want[ed her] to make him a sandwich or something, [she would] make him a sandwich or something" (*id.*).

When asked about self-care, Plaintiff said her husband helped her shower because she could bathe only part of her body (*id.* at 65–66). She was able to wash her hair, however, and brush her teeth (*id.* at 66). She went to church (*id.*). She also watched television (*id.* at 68). And she fished and went to festivals with her husband (*id.* at 68–69). Her husband had five indoor dogs and nine outdoor hunting dogs that he mostly cared for (*id.* at 66–67). Plaintiff and her husband supported themselves and their pets with the husband's disability benefits (*id.* at 67).

A vocational expert, Jack Thomas, also testified at the hearing (*id.* at 78). The ALJ asked Mr. Thomas to assume an individual of Plaintiff's age, education, and work experience who is able to perform light exertion work and frequently lift and/or carry ten pounds; occasionally lift and/or carry twenty pounds; sit, stand, and walk, with normal breaks, for approximately six hours in an eight-hour workday; push and pull as much as she can lift and/or carry; frequently climb ramps and stairs

and kneel; occasionally climb ladders, ropes, and scaffolds, crouch, and crawl; frequently be exposed to dust, odors, fumes, and pulmonary irritants; occasionally be exposed to hazards and heights; is limited to understanding and remembering simple instructions and work-related procedures; and can complete simple and repetitive work tasks and maintain concentration, persistence, and pace throughout the day with ordinary supervision (*id.* at 85–86). The ALJ then asked whether such an individual could perform Plaintiff's past work (*id.* at 86). Mr. Thomas responded that such an individual would not be able to perform Plaintiff's past work because of the inability to sit down except during breaks (*id.*).

The ALJ asked whether there was other work such an individual could perform (*id.* at 87). Mr. Thomas replied that such an individual could perform the jobs of marker, blade balancer, and silver wrapper (*id.* at 87–88). The ALJ next asked if an individual who was off task ten percent of the workday due to pain would be able to perform those jobs (*id.* at 88). Mr. Thomas said the jobs would still be available but "the employers would be trying to get the person to miss less than 10 percent of the time, be more productive than missing 10 percent of the time" (*id.*). According to Mr. Thomas, "if it didn't change, then the individual would lose those jobs" (*id.*).

Plaintiff's counsel also questioned Mr. Thomas (*id.*). Counsel asked whether the hypothetical individual could perform the three jobs Mr. Thomas identified if the individual's pace was decreased due to the need for constant supervision (*id.* at 89). After Mr. Thomas attempted to clarify the question, counsel said the individual would need frequent instruction (*id.*). Mr. Thomas responded, "the problem is these jobs are relatively simple. They're learned in 30 days or less, and . . . they're not complex jobs. And what happens is that an employer might bear with that for a couple of days, but if the individual is still needing to be redirected, then the job is not going to continue to be there" (*id.*). Counsel added that the individual would be able to stand for only half of an eight-hour workday (*id.*). Mr. Thomas said the jobs he identified could be performed standing or sitting (*id.* at 89–90).

## DISCUSSION

I.     Combination of Impairments/Obesity

Plaintiff first argues the ALJ erred in not considering the impact of obesity in combination with bilateral knee osteoarthritis, bilateral knee scoliosis, and spur formation on her ability to perform light work. As the Eleventh Circuit explained,

> obesity is not a listed impairment, but the ALJ is required to consider obesity in the analysis of a claimant's overall medical condition. *See* SSR 02–1p. Social Security Regulation 02–1p provides that obesity shall be considered when determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the

impairment meets or equals the requirements of a listed impairment, and (4) the impairment bars claimant "from doing past relevant work and other work that exists in significant numbers in the national economy."   SSR 02–1p.

*Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (per curiam)

(unpublished).   The Regulations further provide that

> "[b]ecause there is no listing for obesity, we will find that an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. . . .
>
> We may also find that obesity, by itself, is medically equivalent to a listed impairment. . . .   For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .
>
> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.

*Id.* (*quoting* SSR 02–1p).

Accordingly, when a claimant has alleged multiple impairments, including obesity, the Commissioner has a duty to consider the combination of impairments and determine whether the combined impairments render the claimant disabled.

Here, the ALJ found obesity to be a severe impairment, specifying plaintiff's height, weight, and body mass index (tr. 25). The ALJ also found a number of other severe impairments. But the ALJ expressly found Plaintiff did "not have an impairment *or combination of impairments* that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (*id.* at 18) (emphasis added). The ALJ observed that "the medical evidence of record does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination" (*id.*). She explained that "[a]t each step of the sequential evaluation process, [she] . . . specifically considered the effects of claimant's obesity under Social Security Ruling 02–1 in formulating the claimant's residual functional capacity" (*id.* at 25).

The ALJ thus plainly considered the combination of Plaintiff's impairments, including obesity, and made sufficient findings regarding the effect thereof. *See Wilson*, 284 F.3d at 1224–25 (finding ALJ's reference to "*combination of impairments*" sufficient "evidence that [the ALJ] considered the combined effects of [the claimant's] impairments"); *see also Wheeler v. Heckler*, 784 F.2d 1073, 1076

(11th Cir. 1986) (same).[4]   Even if she had not, Plaintiff has wholly failed to explain how additional consideration of the combination of impairments would lead to a finding of disability.   Plaintiff, therefore, has not shown the ALJ erred in considering the combined effect of her impairments, including obesity.

II.     Credibility Determination

Plaintiff also challenges the ALJ's credibility determination, arguing the ALJ erred in considering non-compliance with medical treatment and finding that her activities of daily living were "good."   A claimant who attempts to prove disability based on subjective complaints must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing her medical condition could reasonably be expected to give rise to the symptoms alleged.   *See* 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b); SSR 96–7p; *see also Wilson*, 284 F.3d at 1225–26.   If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes she has an impairment that could reasonably be expected to produce the symptoms alleged, the ALJ must evaluate the intensity

---

[4] Plaintiff faults the ALJ for not citing two knee x-rays which showed degenerative changes, including sclerosis and spur formation (tr. 574, 624).   An ALJ, however, is not required to specifically reference every piece of evidence and need only demonstrate that she considered the claimant's medical condition as a whole, which plainly is the case here.   *See Adams*, 586 F. App'x at 533.

and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d); 416.929(c), (d); SSR 96–7p; *see also Wilson*, 284 F.3d at 1225–26. Notably, in determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "[C]redibility determinations are the province of the ALJ, and [a court] will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal citations omitted).

The ALJ found Plaintiff not entirely credible due to "[i]nconsistent reports and testimony," as well as "the fact that the record contains observations of generally stable examination findings, non-compliance with medication despite noted improvement when compliant with medical instruction, and good activities of daily living including cooking, cleaning, driving, shopping, and caring for several pets," all of which the ALJ found "detracts from the consistency of the claimant's statements as to functional limitations and the severity of the alleged symptoms" (tr. 27). The ALJ's reasons for discounting plaintiff's credibility are supported by substantial evidence in the record.

Although the medical findings may provide an objective basis for some of Plaintiff's impairments and other symptoms, they do not reflect symptoms of disabling severity. As the ALJ noted, the evidence of record shows largely stable findings (*id.* at 26). Plaintiff repeatedly denied pain, stiffness, and weakness in her joints, back, neck, and muscles (*id.* at 485, 498, 526, 534, 617, 620, 631). Examinations revealed an individual in no acute distress with full muscle and grip strength; full range of motion in the extremities, neck, and back; good alignment and no tenderness in the back; a supple neck; no edema in the extremities; no sensory deficits; negative straight leg raises; a normal gait; and an ability to perform tandem walking and stand from a seated position without incident (*id.* at 486–87, 499, 522, 524, 528, 535, 540, 571–72, 576–77, 591–95, 618, 620–21, 631–32, 647–48, 657–58).

Diagnostic imaging of Plaintiff's knee was generally unremarkable and revealed, at most, mild osteoarthritic changes with associated degenerative changes (*id.* at 574, 581, 648, 650, 660–61). In fact, records from a November 23, 2015, visit to the emergency room for left knee pain reflect that "[t]he severity of the pain was minimal and [a] 3" on a ten-point scale (*id.* at 570). On May 5, 2016, Plaintiff reported during an annual visit that her knee was "feeling 'fine'" (*id.* at 620). She repeatedly reported her pain level between zero and three on a ten-point scale (*id.* at

499, 526, 570, 620, 632).   And she took no pain medication (*id.* at 62).   Her blood

pressure was elevated at times, but it was generally controlled despite Plaintiff's

failure to follow the prescribed medication regimen (*id.* at 540, 617).

As the ALJ further observed, Plaintiff made inconsistent statements regarding

her condition (*id.* at 27).   She reported on a Supplemental Pain Questionnaire that

she experienced pain all day, but she acknowledged at the hearing that she did not

take pain medication or pursue any other form of treatment for pain (*id.* at 21–22,

413).   Instead, she took anti-inflammatories, muscle relaxers, and over-the-counter

medication as needed (*id.* at 487, 499, 534, 539, 570, 573, 606, 623, 630, 633, 659).

Plaintiff said she did not take pain medication because she was "scared to go to the

doctor to find out what was going on" (*id.* at 62).   She also referenced the fact that

she had no insurance.   "While poverty excuses noncompliance with treatment," as

Plaintiff points out, "[l]ack of desire for treatment is not good cause for failure to

seek treatment."   *See Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 (11th

Cir. 2016).

Plaintiff's statements regarding activities of daily living likewise were

inconsistent.   Plaintiff indicated on a Supplemental Pain Questionnaire that she

could not perform housecleaning, do laundry, or shop (tr. 413).   She indicated on a

Function Report that she could not cook, clean, or wash dishes (*id.* at 371).   She

testified at the hearing, however, that she prepared meals daily, including biscuits with tomato gravy, eggs, bacon, and toast and for her husband's breakfast and sandwiches for lunch (*id.* at 63, 65, 74). After cooking, she would wash dishes by hand and sweep the kitchen floor (*id.* at 63, 65). She did her own laundry—to include washing, drying, and folding clothes (*id.* at 398, 406). She indicated on a Function Report that she did not drive because it hurt her <u>back and neck</u> to turn (*id.* at 407); she testified at hearing that she had a driver's license and drove down the street to her mother-in-law's house as well as on a dirt road, although driving hurt her <u>knee</u> (*id.* at 48–49). Plaintiff also indicated on the Function Report that she had difficulty caring for her hair because she had trouble lifting her arms (*id.* at 405), but she testified at the hearing that she was able to wash her hair (*id.* at 66). Plaintiff went to church, went to festivals and fishing with her husband, visited her mother-in-law, shopped at Walmart and the dollar store, and helped care for her husband's dogs by watering and feeding them and letting them outside (*id.* at 65–66, 68-69, 400, 405, 408). Substantial evidence thus supports the ALJ's finding that Plaintiff engaged in "good" daily activities.

In addition, contrary to Plaintiff's assertion, the ALJ did not err in referencing her non-compliance with medication, as non-compliance was not the primary basis of the ALJ's decision. Rather, the ALJ considered Plaintiff's noncompliance

together with the other evidence of record in finding Plaintiff's complaints regarding the severity of her symptoms not fully credible. *See Jacobus*, 664 F. App'x at 777 (finding ALJ did not err in considering claimant's failure to seek treatment because "[t]he ALJ did not primarily rely on [the claimant's] failure to seek treatment in reaching his decision" and, instead, "extensively discussed the medical evidence of record, and concluded the evidence did not support [the claimant's] claim he was disabled"); *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267–68 (11th Cir. 2015) (holding that "[w]hen the ALJ primarily if not exclusively relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration," but "if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists") (internal marks omitted).

Also contrary to Plaintiff's assertion, the ALJ did in fact consider her ability to afford medication, noting that although Plaintiff and her husband lived off the husband's limited disability income, Plaintiff's husband paid the family's bills and still was able to support his hunting and fishing hobbies, along with fourteen dogs (tr. 47–48, 66–67). Moreover, when Plaintiff reported in April 2016 that she had not taken blood pressure medication "in months" because she was out of the

medication, Plaintiff's husband contradicted her, noting he had a doctor call in a prescription a few months prior (*id.* at 617). And Plaintiff's husband worked as a volunteer assisting emergency medical technicians, which could have led the ALJ to reasonably conclude Plaintiff's husband could have obtained a paying job were the family truly destitute, as Plaintiff alleges. Finally, as set forth above, Plaintiff testified at the hearing that, other than applying for Medicaid, she did not attempt to pursue low-cost or free medication, including medication for hypertension and depression (*id.* at 59–61). The ALJ, therefore, did not err in considering Plaintiff's non-compliance and, instead, "made a clearly articulated credibility finding and pointed to specific reasons for discrediting [Plaintiff's] subjective complaints of disabling pain" that included factors other than Plaintiff's non-compliance with medical directives. *Mitchell*, 771 F.3d at 782.

## CONCLUSION

For the foregoing reasons, the undersigned finds the Commissioner's decision supported by substantial evidence and application of proper legal standards and thus that it should be affirmed.[9] 42 U.S.C. § 405(g); *Lewis*, 125 F. 3d at 1439; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

---

[9] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review. *See Moore*, 405 F.3d at 1208.

Accordingly, it is hereby **ORDERED**:

1.      The clerk of court is directed to substitute Andrew Saul as Defendant.

2.      The decision of the Commissioner is **AFFIRMED**, and this action is **DISMISSED**.

3.      The clerk is directed to enter **JUDGMENT** pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the decision of the Commissioner and to close the file.

At Pensacola, Florida this 2nd day of March 2020.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**